UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES B. ARCHER, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 96-B-2160-S |
| RGIS INVENTORY SPECIALISTS, | } |
| Defendant. | } |

**MEMORANDUM OPINION**

Currently before the court is the motion of the defendant, RGIS Inventory Specialists ("defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

This suit arises out of plaintiff James B. Archer's ("plaintiff") application for employment with defendant. Plaintiff alleges that, in failing to hire him for the position of inventory auditor, defendant discriminated against him on the basis of his age and disability in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621-634 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102-12213. Defendant denies any discriminatory hiring practices and moves for summary judgment on the grounds that: (1) plaintiff cannot establish a prima facie case of age or disability discrimination; and (2) even if plaintiff could establish a prima facie case, he cannot show that defendant's reason for not hiring him was a pretext for discrimination.

## FACTUAL SUMMARY

Defendant is a company that takes physical inventory in many different retail establishments. (Def.'s App. 2 at 1.)[1] On January 16, 1996, plaintiff applied for employment with defendant in its Birmingham South Office (the "district office"). (Def.'s App. 1; Def.'s App. 2 at 2.) Plaintiff specifically applied for the position of inventory auditor. (*See* Def.'s App. 1.)

The pre-employment application which the plaintiff filled out expressly states "the defendant complies with the Americans with Disabilities Act and with state laws concerning employment of the disabled. If you are covered by these laws and need accommodation in the application or interview process, please ask for assistance." (Def.'s App. 1.) At no time during the application process did the plaintiff advise the defendant that he was disabled. (Def.'s App. 2 at 2.)

The pre-employment application filled out by the plaintiff does not ask the age of the applicant, but merely asks if the applicant is eighteen years or older. The defendant does not know the age of the applicants until they complete the training process, are hired by the defendant and fill out a Government 1-9 Form. Consequently, at no time during the application process did the defendant know the age of the plaintiff. (Def.'s App. 2 at 4-5.)

The pre-employment application contains an insert titled "Pre-Employment Information" which is given to the applicants to take home with them. The General Policies Section of the Pre-Employment Information expressly provides that it is the defendant's policy

---

[1]Defendant's evidence in support of its Motion for Summary Judgment was tabbed and each tab is referred to by defendant as an "Appendix."

2

to provide a working environment free from harassment based on sex, race, national origin, age or hardship and provides an address for the applicant/employee to report the harassment. (Def.'s App. 13.) However, at no time during the application process did the plaintiff report the alleged discrimination and/or harassment to the defendant. (Def.'s App. 2 at 2.)

Employees hired for the inventory auditor position are required to take physical inventory in many different retail establishments with the use of a handheld calculator and step ladder and perform other duties as requested by the supervisor. (Def.'s App. 2 at 1.) Basic math skills are necessary to adequately perform the job. (Def.'s App. 2 at 2.) Applicants hired as inventory auditors are required to work four to seven hour spans from 6:00 p.m. until 1:00 a.m. in various locations. (*Id.*) Because of the irregular hours and locations employees are required to work, defendant stresses to applicants the importance of having access to transportation to and from work. (*Id.*)

The process of applying for employment with defendant consists of a series of steps. Applicants are first required to complete a pre-employment application. (*See* Def.'s App. 1.) Defendant then gives each applicant a pre-employment aptitude exam in order to assure that the applicants can perform the job of inventory auditor with speed and accuracy. (Def.'s App. 2 at 2.) If an applicant is able to pass the pre-employment aptitude exam, that applicant is considered qualified to attend the next phase of defendant's hiring process. (*Id.*) If an applicant is unable to pass the pre-employment aptitude exam, that applicant is not considered qualified to perform the job and is not hired.

Defendant's pre-employment aptitude exam consists of two parts: an auditor aptitude test and a multiplication test. (*See* Def.'s App. 7-8.) Defendant's hiring practices require

3

applicants to answer a minimum of twenty-eight questions correctly on the auditor aptitude test portion of the pre-employment aptitude exam in order to return for training. (Def.'s App. 2 at 3.) If an applicant fails to answer at least twenty-eight questions correctly on the auditor aptitude test, then the multiplication test is not considered and they are not asked to return for training. (*Id.*) If an applicant answers at least twenty-eight questions correctly on the auditor aptitude test, the multiplication test is considered. (*Id.*) If an applicant answers exactly twenty-eight questions correctly on the auditor aptitude test, the applicant must answer at least forty-five questions on the multiplication test correctly in order to be asked to return for training. (*Id.*) Defendant asserts that plaintiff answered twenty-five questions correctly on the auditor aptitude test portion of the pre-employment aptitude exam. (*Id.*) Defendant further asserts that, because of plaintiff's low score on the auditor aptitude test, plaintiff's multiplication test was not considered and he was not asked to return for training. (*Id.*)

On January 16, 1996, plaintiff completed defendant's pre-employment application for the position of inventory auditor. After plaintiff filled out the pre-employment application, defendant's district manager, Gary Crow ("district manager"), gave a presentation to plaintiff and three other applicants ("other applicants"). (Def.'s App. 2 at 2.) During the presentation, the district manager explained what the defendant does, the positions available, the physical requirements of the job, the hours required for employees to work, the pay scale, and the importance of access to transportation to and from work because of the various hours and locations employees are required to work. (*Id.*)

Following the presentation, plaintiff and the other applicants were given both portions of the pre-employment aptitude exam. All applicants were timed on both the exams. (*Id.*)

4

Plaintiff testified at his deposition that, about two-thirds of the way through his pre-employment aptitude exam, he discovered that he had skipped a page. (Pl.'s Dep. 32.) Plaintiff states that, as a consequence, he had to start the exam over and "go like hell." (Def.'s App. 3 at 32-34.)

When plaintiff went to defendant's district office to apply for the position of inventory auditor he was using a cane.[2] However, during the presentation and exams that followed, plaintiff was not using his cane because he was seated at a table with the other applicants. (Def.'s App. 2 at 3.) The district manager states that he noticed a cane hanging on the edge of the table during the presentation. (*Id.*) However, he states that he did not know who the cane belonged to since all the applicants were already seated when he walked into the room and he never saw plaintiff standing during the presentation (*Id.*) The district manager further states that, since none of the applicants explained that they were disabled, he assumed that the cane was being used for a sprained ankle or some other type of temporary malady. (*Id.*)

On January 17, 1996, the morning following the pre-employment exams, plaintiff called the district office to find out if he was hired. He spoke with defendant's district office secretary, Shirley Miller ("district secretary"). Plaintiff has testified that the following conversation took place during the telephone call:

> But I called up the next morning to see if I was hired, and she said, no, you were not hired. And I said, how come; she said, well you failed the test. I said, boloney. I know damn well I did good on that test. So she said hold the phone for just a minute.

---

[2] Plaintiff has testified during his deposition that he only uses a cane when he is in unfamiliar territory and that he never uses his cane around his house. (Def.'s App. 3 at 49-50.)

5

> I said I know on the math part I maxed that. So she come back and she said, yes, you did very well on the math test, but you failed the aptitude test. You got only 30 out of 35, which is far below our standards. To which I rebutted, bullshit, and I hung up. That was the last conversation I had with them.

(Def.'s App. 3 at 38.)

The district secretary attests that when plaintiff called the office on January 17, 1996, she advised plaintiff as follows:

> Sir, unfortunately your test score on our aptitude test was not within the guidelines set by this district to return at this time for training. You are welcome to look for our ad and apply for employment again after a ninety (90) day period.

(Def.'s App. 4 at 1-2.) The district secretary further attests that she advised plaintiff he could make an appointment with her to come into the district office to review his test scores. (*Id.*) The district secretary states that plaintiff replied: "Well Shirley I'll tell you what I think of your Goddamn tests they are bullshit." (Def.'s App. 4 at 2.)

Plaintiff admits that, after he was advised by the district secretary that he failed the pre-employment aptitude exam, he did not have any further conversations with anyone associated with defendant regarding his test results or go back to the district office to review his exam. Plaintiff did not re-apply for employment with defendant. (Def.'s App. 4 at 2; Def.'s App. 3 at 34.)

On January 22, 1996, plaintiff filed a charge of discrimination with the EEOC. In the charge, plaintiff alleged that he was denied employment with defendant because of his age and his disability in violation of the ADEA and ADA. (Def.'s App. 5.) Subsequently, the EEOC conducted an investigation and dismissed plaintiff's charge because it was unable to conclude

6

that defendant had violated the ADEA and ADA. (Def.'s App. 6.) This lawsuit followed.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless,

credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534,1540 n.12 (11th Cir. 1988).

## DISCUSSION

### I. Plaintiff's ADEA Claim

Plaintiff predicates liability under the ADEA by asserting that defendant failed to hire him based upon his age. A plaintiff asserting a discrimination claim under the ADEA must prove intentional discrimination by a preponderance of the evidence. A plaintiff may prove an intentional discriminatory motive by producing: (1) direct evidence of discriminatory intent; (2) circumstantial evidence of discriminatory intent; or (3) statistical proof of a pattern of discrimination. *See Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989); *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). The plaintiff in this case has not offered direct evidence of discriminatory intent or statistical proof of a pattern of discrimination. Therefore, plaintiff is required to establish a prima facie case under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, if the plaintiff establishes a prima facie case of discrimination, then the defendant bears the burden of rebutting the presumption of discrimination. The defendant can do this by producing evidence of a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff, who must establish by a preponderance of the evidence

8

that the defendant's proffered reasons for the adverse employment decision are pretextual. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)(citation omitted). The plaintiff may do this either "by means of affirmative evidence that [age] played an impermissible role in the [employer's] decision or by showing that the proffered non-discriminatory reasons do not merit credence." *Lincoln v. Bd. of Regents of Univ. Sys. of Ga.*, 697 F.2d 928, 938 (11th Cir. 1983).

In order to make out a prima facie case on his age discrimination claim, plaintiff must show: (1) that he was a member of a protected group of persons between the ages of forty and seventy, (2) that he was subjected to adverse employment action, (3) that he was replaced by a person outside the protected group, and (4) that he was qualified to do the job. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996)(citation omitted); *Verbraeken*, 881 F.2d at 1045. Based upon the facts presented, plaintiff has failed to establish a prima facie case.

It is undisputed that plaintiff is within the protected group as required by the first element. Furthermore, plaintiff was subjected to an adverse employment action when he was not hired by defendant. However, plaintiff cannot prove the remaining elements of his prima facie case on his ADEA claim. Plaintiff has not established the third element of his ADEA claim, that he was replaced by a person outside the protected group. The evidence shows that defendant hired seventeen inventory auditors during January, 1996. (Def.'s App. 2 at 4.) Of the seventeen hired, eight were between the ages of forty and seventy, while the remaining nine were under forty years of age and fell outside the protected group. (*Id.*) Because defendant hired applicants both within and falling outside the protected group under the ADEA, plaintiff cannot prove that a person outside the protected group was hired for the inventory auditor position that plaintiff was denied. Thus, plaintiff has failed to prove the third element of his prima facie case and defendant is

9

entitled to summary judgment on plaintiff's ADEA claim.

Furthermore, plaintiff has not demonstrated that he was qualified for the position of inventory auditor as required by the fourth element of his prima facie case of age discrimination. Plaintiff has not alleged during this case that he was qualified for the position of inventory auditor. (*See* Compl. and Pl.'s Aff.) There is no evidence in the record showing that plaintiff was qualified for the position of inventory auditor. Therefore, because plaintiff has failed to address the fourth element of his prima facie case, he cannot prevail on his ADEA claim.

Even assuming that plaintiff has proven a prima facie case of age discrimination, plaintiff cannot prove by significantly probative evidence that defendant's legitimate reason for not hiring him is a pretext for discrimination. Defendant has successfully rebutted any inference of discrimination by asserting that it did not hire plaintiff because he failed to answer at least twenty-eight questions correctly on the auditor aptitude test portion of his pre-employment aptitude exam. Defendant's district manager attests that defendant gives the pre-employment aptitude exam in order to assure that the applicants can perform the job of inventory auditor with accuracy and speed and that if an applicant does not answer a minimum of twenty-eight questions correctly on the auditor aptitude test they would not be hired by defendant. (Def.'s App. 2 at 2.) Defendant has submitted the pre-employment aptitude exams of all the applicants who applied for employment in January of 1996. (*See* Def.'s App. 7, 10, 15.) The exams show that no other applicant who answered less than twenty-eight questions correctly on the auditor aptitude test was hired by the district office during January of 1996. (Def.'s App. 2 at 4; Def.'s App. 10, 15.) The exams further reveal that all the applicants hired by defendant during January of 1996 scored thirty or above on their auditor aptitude test. In fact, thirteen of the seventeen applicants who

10

were hired by the defendant in January of 1996 scored ten or more points higher than the plaintiff on the auditor aptitude test portion of their pre-employment aptitude exams. (*Id.*)

In support of his allegation that defendant's reason for not hiring him is pretextual, plaintiff alleges that his correct score on the auditor aptitude test was twenty-nine and defendant attempted to obscure his answers to question numbers 11, 36, and 38. (Pl.'s Aff. 1.) During his deposition, however, plaintiff testified that he and his attorney counted that he only answered twenty-seven questions correctly on the auditor aptitude test. (Def.'s App. 3 at 38.) Plaintiff has failed to produce any evidence to support his allegation that defendant attempted to obscure his answers to question numbers 11, 36, and 38.

Plaintiff further alleges that he answered question numbers 20, 21, and 22 and that defendant blackened out his answers by putting a small piece of white paper over the original before copying it. (Pl.'s Aff. 1.) Plaintiff has not presented any evidence to support this allegation. Defendant, however, has produced evidence that the applicants were advised not to answer question numbers 20 through 22 on the pre-employment aptitude exam and that question numbers 20 through 22 were not counted wrong on the plaintiff's or any other applicant's pre-employment aptitude exam. The evidence shows that the district office marked an X through questions 20, 21 and 22, so that question numbers 20 through 22 were not answered on the plaintiff's or any other applicant's aptitude exam. (*See* Def.'s App. 2 at 2-3; Def.'s App. 10, 15.) Plaintiff has not disputed the evidence produced by defendant regarding question numbers 20 through 22.

Plaintiff's allegations attempting to show that defendant's proffered reason is a pretext for discrimination are merely conclusory. The Eleventh Circuit has consistently held that "conclusory

11

allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989)(alteration in original)(citation omitted); *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)(citation omitted). Due to plaintiff's failure to present significantly probative evidence on the issue of pretext, defendant is entitled to summary judgment on plaintiff's ADEA claim.

### 2. Plaintiff's ADA Claim

Plaintiff contends that he was denied employment with defendant because he is disabled. Under the ADA, it is illegal for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To hold defendant liable under the ADA, plaintiff must demonstrate that: (1) he has a disability; (2) he is a qualified individual; and (3) he was discriminated against because of his disability. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996); *Pritchard v. S. Co. Serv.*, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, plaintiff must prove that defendant had either actual or constructive knowledge of plaintiff's alleged disability or considered plaintiff to be disabled. *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996)(citations omitted). In this case, plaintiff has failed to present a prima facie case of disability discrimination.

For purposes of the motion for summary judgment, defendant concedes that plaintiff has a disability. Plaintiff, however, cannot establish the remaining elements of his prima facie case.

Specifically, plaintiff was not qualified for the inventory auditor position because he was not able to pass defendant's pre-employment aptitude exam. Therefore, based upon the court's reasoning concerning plaintiff's ADEA claim, plaintiff cannot prove that he is qualified for the position of inventory auditor. Since plaintiff has failed to establish the second element of his prima facie case, that he was a qualified individual, defendant is entitled to judgment as a matter of law on plaintiff's ADA claim.

Plaintiff has also failed to establish the third element of his prima facie case on his ADA claim, that is, that defendant discriminated against him because of his disability. Plaintiff alleges that the district manager's question to plaintiff regarding his means for transportation to travel to and from work was discriminatory. (Def.'s App. 3 at 39.) However, plaintiff admits that the district manager discussed transportation with the other applicants during the presentation. Plaintiff testified during his deposition that the district manager stressed to the other applicants that they must "have [their] own transportation, dependable transportation, because sometimes [they] had to be out at the store at two o'clock in the morning." (*Id.*) Defendant has produced evidence that it stresses to all applicants during the presentations, on the pre-employment applications, and in the pre-employment information, that access to transportation to and from work is very important because of the various locations and schedules employees are required to work. (Def.'s App. 2 at 2; Def.'s App. 1, 12, 13.) Based on this evidence, no reasonable jury could conclude that the district manager's alleged question to plaintiff regarding his means of transportation was in any way based upon his disability.

Plaintiff has also failed to demonstrate that defendant had either actual or constructive knowledge of his disability or considered him to be disabled. The evidence shows that at no time

prior to the filing of plaintiff's EEOC charge did defendant have knowledge that plaintiff had a disability. It is undisputed that plaintiff did not advise the district manager or any other employee of defendant that he was disabled at any time during the application process. (Def.'s App. 2 at 2.) The district manager states that he did not see plaintiff standing during the presentation and exams. The district manager acknowledged that he did notice a cane hanging on the edge of the table during the presentation and exams, but did not know who the cane belonged to since everyone was seated when he walked into the room. Because neither plaintiff nor the other applicants advised the district manager or any other employee of defendant that they were disabled, the district manager assumed that the cane was for a sprained ankle or some other temporary malady. (*Id.*) Given plaintiff's failure to show that defendant had actual or constructive knowledge of his disability, summary judgment is due to be entered in favor of defendant and against plaintiff on plaintiff's ADA claim.

Even assuming plaintiff has proven a prima facie case of disability discrimination, plaintiff cannot prove by significantly probative evidence that defendant's articulated reason for not hiring him, that is, plaintiff having failed the pre-employment aptitude exam, is a pretext for discrimination. In finding that plaintiff has not presented any evidence that the reason defendant failed to hire him is merely a pretext for discrimination, the court adopts the same reasoning set forth in this memorandum opinion concerning the plaintiff's ADEA claim. Therefore, because plaintiff cannot show that defendant's reason for not hiring him is pretextual, defendant is entitled to summary judgment on plaintiff's ADA claim.

## CONCLUSION

The defendant has shown that there are no disputed issues of material fact with regard to plaintiff's ADEA and ADA claims. Therefore, defendant is entitled to judgment as a matter of law. The court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's ADEA and ADA claims. An order in accordance with this memorandum opinion will be entered contemporaneously herewith.

DONE this 29th day of January, 1998.

SHARON LOVELACE BLACKBURN
United States District Judge